UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 23-10669-pmb |
| | : | |
| PRECIOUS DEKOTA A. WHITE, | : | CHAPTER 7 |
| Debtor. | : | |
| _____ | : | JUDGE BAISIER |
| | : | |
| INVITATION HOMES 7 LP, | : | |
| Movant, | : | |
| vs. | : | |
| | : | CONTESTED MATTER |
| PRECIOUS DEKOTA A. WHITE, | : | |
| Debtor. | : | |
| | : | |
| GRIFFIN E. HOWELL, III, | : | |
| Trustee, | : | |
| | : | |
| Respondents. | : | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Movant INVITATION HOMES 7 LP, has filed a *MOTION FOR RELIEF FROM STAY* and related papers with the Court seeking an Order Granting Motion for Relief from Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the *MOTION FOR RELIEF FROM STAY* at 10:00 A.M. on September 13, 2023, in the **2nd Floor Courtroom**, in the Lewis R. Morgan Federal Building and United States Courthouse, 18 Greenville Street, Newnan, Georgia 30263, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not

1

have video capability may use the telephone dial-in information on the judge's webpage.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, 18 Greenville Street, 2nd Floor, Newnan, Georgia 30263. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date.   Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: August 22, 2023

<div style="margin-left: 40%">

O'KELLEY & SOROHAN
ATTORNEYS AT LAW, LLC

*/s/ John G. Brookhuis*
John G. Brookhuis
Georgia Bar No. 940484
*Attorney for Movant*

</div>

4228 First Ave., Suite 10
Tucker, GA 30084
T: (770) 491-0175
E: jbrookhuis@oslawllc.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | **:** | CASE NO. 23-10669-pmb |
| | **:** | |
| PRECIOUS DEKOTA A. WHITE, | **:** | CHAPTER 7 |
| Debtor. | **:** | |
| _____ | **:** | JUDGE BAISIER |
| | **:** | |
| INVITATION HOMES 7 LP, | **:** | |
| Movant, | **:** | |
| vs. | **:** | |
| | **:** | CONTESTED MATTER |
| PRECIOUS DEKOTA A. WHITE, | **:** | |
| Debtor. | **:** | |
| | **:** | |
| GRIFFIN E. HOWELL, III, | **:** | |
| Trustee, | **:** | |
| | **:** | |
| _____Respondents._____ | **:** | |

## <u>MOTION FOR RELIEF FROM STAY</u>

COMES NOW, INVITATION HOMES 7 LP ("Movant"), by and through its

counsel of record, and shows this Court the following:

1.

PRECIOUS DEKOTA A. WHITE, ("Debtor"), having filed a voluntary

petition pursuant to 11 U.S.C. § 1301, *et seq.*, are subject to the jurisdiction of this

Court.

2.

This Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362.

3.

This Motion is filed pursuant to 11 U.S.C. § 362(d). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

4.

Movant is the owner and landlord of certain real property located at 361 Hunterian Place, Newnan, GA 30265 (hereinafter referred to as "Subject Property"), having purchased it from SR Sunbelt Homes Group 1, L.L.C., fka Progress Residential Exchange Borrower, LLC (known to Debtor as Streetlane Homes) on or about July 18, 2023. A true and correct copy of the Warranty Deed is attached hereto as **Exhibit "A"** and incorporated herein by reference.

5.

The Subject Property is currently leased to Debtor pursuant to a Rental Agreement at a rental rate of $2,114.70 per month plus a $11.00 utility service fee, and gas, water, and sewer utilities which vary from month to month ("Lease"). A true and correct copy of the Lease is attached hereto as **Exhibit "B"** and incorporated herein by reference. A late fee of $100.00, is assessed if rent is not paid in full by the fourth (4th) day of each month, with an additional $15.00 per day late fee each day after that. Debtor listed the Lease with Streetlane Homes, now owned by Movant, in Schedule G of their petition [Doc. 1, Pg. 43]. Debtor listed the property as their residence in the voluntary petition [Doc. 1, Pg. 2]. Debtor did not list Movant in the Statemen of Intention.

6.

Debtor has defaulted under the terms of the Lease by failing to pay the monthly rent, fees, utilities, and late fees as required beginning in at least July, 2023 when Movant took over ownership of the Subject Property, through the date of this Motion. As of the filing of this motion, the unpaid rent, fees, and charges owed to Movant is $3,514.30. A true and correct copy of the resident ledger for the Property is attached hereto as **Exhibit "C"** and incorporated herein by reference. Movant further alleges that Debtor will continue to incur arrearages in both rent and late fees.

7.

Movant seeks to dispossess Debtor and any other occupants from the Property but is unable to exercise its state law remedies and pursue state law dispossessory proceedings as the automatic may be in effect.

8.

Because Movant is the owner of the Subject Property but unable to dispossess occupants of said Subject Property, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

8.

Further, because there may be little or no equity in the property which could benefit the Estate, the Trustee's interest should be deemed abandoned and the stay should be lifted with regard to Movant to allow it to proceed with the dispossessory proceedings.

WHEREFORE, Movant prays for the following relief:

(A)     An Order lifting the automatic stay, authorizing Movant to exercise its rights to take possession and enjoy use of that property which it currently owns;

(B)     That the relief granted herein be made binding in the event of conversion to another Chapter of the Bankruptcy Code;

(C)     That the Court validate any action(s) taken after bankruptcy was filed;

(D)     That the Court waive the 14-Day Stay of Bankruptcy Rule 4001(a)(3);

(E)     That Movant recover its reasonable costs and attorney's fees for having to file this Motion; and

(F)     For such other and further relief as the Court deems just and equitable.

Dated: August 22, 2023.

O'KELLEY & SOROHAN
ATTORNEYS AT LAW, LLC

*/s/ John G. Brookhuis*
John G. Brookhuis
Georgia Bar No. 940484
4228 First Ave., Suite 10
Tucker, GA 30084
T: (770) 491-0175
E: jbrookhuis@oslawllc.com
*Attorney for Movant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2023, I electronically filed the foregoing *Notice of Hearing* and *Motion For Relief From Stay* with the Clerk of Court using the CM/ECF system which will automatically send an e-mail notification of such filing to the parties or attorneys of record. I have also on this day caused a copy of the pleading to be placed in the first-class United States mail, postage prepaid, addressed to the following recipients not participating in the CM/ECF system as follows:

Precious Dekota A. White
361 Hunterian Place
Newnan, GA 30265
*Pro-Se Debtor*

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Dr. SW
Atlanta, GA 30303
*U.S. Trustee*

Griffin E. Howell, III
Griffin E. Howell III & Assoc, Ltd
127 1/2 East Solomon Street
PO Box 2271
Griffin, GA 30224
*Trustee*

Dated: August 22, 2023.

O'KELLEY & SOROHAN
ATTORNEYS AT LAW, LLC

*/s/ John G. Brookhuis*
John G. Brookhuis
Georgia Bar No. 940484
4228 First Ave., Suite 10
Tucker, GA 30084
T: (770) 491-0175
E: jbrookhuis@oslawllc.com
*Attorney for Movant*

# EXHIBIT

# A

5736169565
7067927936
PARTICIPANT ID

BK:5639 PG:143-147

D2023010331

FILED IN OFFICE
CLERK OF COURT
07/19/2023 10:33 PM
NIKI SEWELL, CLERK
SUPERIOR COURT
COWETA COUNTY, GA

*Niki Sewell*

PT-61 038-2023-003354

REAL ESTATE
TRANSFER TAX
PAID: $909.50

APN: SG9-436
SG7-262
SG9 155

**PREPARED BY AND WHEN RECORDED
RETURN TO:**

Invitation Homes 7 LP
1717 Main Street Suite 2000,
Dallas, TX 75201
Attention: Val Tipton

---

**LIMITED WARRANTY DEED**

**STATE OF GEORGIA**

**COUNTY OF  COWETA**

THIS LIMITED WARRANTY DEED is made this 18th day of July, 2023, by SR Sunbelt Homes Group 1, L.L.C., a Delaware limited liability company, formerly known as **PROGRESS RESIDENTIAL EXCHANGE BORROWER, LLC**, a Delaware limited liability company ("**Grantor**"), having an address at 2340 Collins Avenue, Suite 700, Miami Beach FL 33139 in favor of Invitation Homes 7 LP, a Delaware limited partnership, ("**Grantee**"), having an address at 1717 Main Street Suite 2000, Dallas, TX 75201.

W I T N E S S E T H :

That Grantor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt and sufficiency of which are hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed and by these presents does grant, bargain, sell, alien, convey and confirm unto Grantee all that tract or parcel of land described on Exhibit A, attached hereto and made a part hereof.

**TO HAVE AND TO HOLD** the said bargained premises, together with all and singular the rights, members and appurtenances thereof, to the same being, belonging or in any wise appertaining, to the only proper use, benefit and behoof of Grantee and its successors and assigns, forever, **IN FEE SIMPLE**.

Without expanding by implication the limited warranty set forth herein, this conveyance is made subject to (i) all easements, highways, rights-of-way, covenants, conditions, restrictions and other matters of record; (ii) all current, non-delinquent real estate taxes and assessments; and (iii) all matters that would be disclosed by an accurate survey or physical inspection of said real estate.

Grantor hereby binds itself and its successors and assigns to warrant and forever defend the right and title to the above described property unto Grantee, its successors and assigns, against the lawful claims of all persons owning, holding or claiming by, through or under Grantor, but not otherwise.

The words "Grantor" and "Grantee" include all genders, plural and singular, and their respective heirs, successors and assigns where the context requires or permits.

      IN WITNESS WHEREOF, the Grantor has caused this Limited Warranty Deed to be executed under seal as of the date first above written.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires: 05/02/2026

**GRANTOR:**

**SR Sunbelt Homes Group 1, L.L.C.,**
a Delaware limited liability company, formerly known as PROGRESS RESIDENTIAL EXCHANGE BORROWER, LLC, a Delaware limited liability company

By: _____
Name: Nick Haechler
Its: Authorized Signatory

HANNAH S. ULRICH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01UL6432512
Qualified in New York County
My Commission Expires 05-02-2026

GA – Sunbelt 1 – Deed

**Exhibit A**

**Legal Description**

| Exhibit # | STREET | CITY | STATE | COUNTY |
|---|---|---|---|---|
| A-1 | 361 Hunterian Pl | Newnan | GA | COWETA |
| A-2 | 120 Lake Cove Approach | Newnan | GA | COWETA |
| A-3 | 15 Camden Village Dr | Newnan | GA | COWETA |

**EXHIBIT A-1**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF NEWNAN, COUNTY OF COWETA, STATE OF GEORGIA AND IS DESCRIBED AS FOLLOWS:

All that tract or parcel of land lying and being in Land Lots Nos. 13 and 20, of the 5th District of Coweta County, Georgia, in the City of Newnan, being Lot No. 42, the Dale at Summergrove Subdivision, aka POD 11, as per plat recorded in Plat Book 83, Pages 42-46, Coweta County, Georgia records, which plat is hereby adopted and made a part hereof by reference thereto for a more complete description of said property

APN: SG9-436

**EXHIBIT A-2**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF NEWNAN, COUNTY OF COWETA, STATE OF GEORGIA AND IS DESCRIBED AS FOLLOWS:

All right, title, interest and estate of grantor now owned, or hereafter acquired by grantor, in and to the following (collectively, the "property"):

All that tract or parcel of land lying and being in Land Lot 16 of the 5th District, Coweta County, Georgia, being Lot 262, Eastlake at Summergrove Subdivision, Phase II, as per plat recorded in Plat Book 74, Pages 143-148, Coweta County Records, said plat being incorporated herein by reference thereto.

APN: SG7-262

**EXHIBIT A-3**

All that tract or parcel of land lying and being in Land Lot 12 of the 5th District, of Coweta County, Georgia, in the City of Newnan, being Lot B55, Phase One of Camden Village and Village Walk at Stillwood Farms Subdivision, as per plat recorded in Plat Book 81, Pages 186-194, Coweta County, Georgia Records, which plat is hereby adopted and made a part hereof by reference thereto for a more complete description of said property.

APN: SG9 155

# EXHIBIT

# B

# RENTAL AGREEMENT

This **RENTAL AGREEMENT** (called the "**Agreement**") is entered into by and between **Streetlane Homes** ("**Landlord, Authorized Agent for Owner**"); and

| | |
|---|---|
| **Resident's Name**:  Precious White | **Resident's Name**:  Ashley Bragg |
| **Primary Phone #**: ▓▓▓▓▓▓ | **Primary Phone #**: |
| **Resident's Name**: | **Resident's Name**: |
| **Primary Phone #**: | **Primary Phone #**: |
| **Resident's Name**: | **Resident's Name**: |
| **Primary Phone #**: | **Primary Phone #**: |

(collectively, **"Resident"** whether one or more).

| MONTHLY RECURRING CHARGES | | DEPOSITS AND FEES | |
|---|---|---|---|
| **Rent** | $2,114.70 | **Refundable Security Deposit** | $1,680.00 |
| **Pet Rent** | $0.00 | **Non-Refundable Pet Fee** | $0.00 |
| **Other** | $0.00 | **Administrative Fee** | $0.00 |
| **TOTAL MONTHLY CHARGES** | $2,114.70 | | |

Landlord Initials _____        Resident Initials _____ / _____

_____ / _____

_____ / _____

Page 1 of 31

**1.**      **RENTAL PROPERTY.**  Resident agrees to rent from Landlord and Landlord agrees to  rent  to Resident  the  dwelling  unit, other  improvements  and  real  property  described  as: **361 Hunterian Pl, Newnan, GA, 30265** as well as the Personal Property  described  on  the  attached Personal Property Addendum (collectively, the "**Premises**").

**2.**      **LEASE TERM.**   The term o f t h i s A g r e e m e n t ( the  "**Lease Term**") shall  commence  on **10/27/2022** (the "**Commencement Date**") and end at 5:00 p.m. local time where the Premises are located ("**Local Time**") on **10/26/2023**.   Resident  shall  vacate  the  Premises  immediately  upon termination of the Agreement unless: (a) Landlord and Resident have extended this Agreement in writing or signed a new rental agreement or (b) a month-to-month tenancy is created pursuant to Section 14.3 of this Agreement.

**3.**      **RENT AND SECURITY DEPOSIT**.

**3.1.**      **SECURITY DEPOSIT**.  Resident's Security Deposit is the amount set forth on Page 1 of this Agreement (the "**Security Deposit**"). **The Security Deposit shall not be used by Resident in lieu of payment of Rent, Late Charges or other amounts owed.** No interest shall be paid on the Security Deposit unless required by the laws of the jurisdiction in which the Premises are located ("**Local Laws**"). The Security Deposit shall be payable directly to Landlord as part of the Initial Payment (as defined in Section 3.3), unless required to be deposited into escrow or into a trust account pursuant to Local Laws, and Landlord shall comply with all Local Laws with respect to the Security Deposit.

**3.2.**      **RENT**.  The monthly rent shall be **$2,114.70**, plus **$0.00** as Pet Rent, plus **$0.00** as Other, for  a  current  total  of **$2,114.70** (collectively,  the  "**Rent**").    Rent  for  any  partial  calendar  months included in the Lease Term shall be prorated on a daily basis.

**3.3.**      **INITIAL PAYMENT**.  Upon Landlord's acceptance of this Agreement, Resident shall pay as follows: (i) one (1) cashier's check or money order in the amount of the prorated Rent through the first day of the first calendar month after the commencement date, based on the amount designated as "TOTAL MONTHLY RENT" on Page 1 of this Agreement (the "**Initial Payment**"), and (ii) one (1) separate cashier's check or money order in the amount of the Security Deposit. In the event that Resident's payment is dishonored for any reason, at Landlord's option, Landlord shall be immediately released from all obligations under this Agreement by notice to Resident.

**3.4.**      **OTHER PAYMENTS.**  The Security Deposit and all Rent shall be paid to Landlord or such other agent of Landlord as Landlord may designate by written notice to Resident. Resident shall pay Rent in advance on the 1st of each month and Rent shall be delinquent after the **4 th** of the month at 5:00 p.m. Local Time (or after such period as specifically provided for by Local Laws) (the "**Delinquent Rent Date**"). To the extent allowed by Local Laws, monthly installments of Rent must be paid in U.S. Currency by t h e e l e c t r o n i c payment method provided below.

**Electronic Payment on Landlord's Website:** Subject to Local Laws, Rent may be paid directly on Landlord's website. To pay Rent on Landlord's website, log on to **www.streetlanehomes.com** and follow the instructions for paying the Rent.

Landlord Initials  _____          Resident Initials  _____ / _____

_____ / _____

_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

3.5.    **LATE CHARGES AND OTHER COSTS OF LATE PAYMENT**.  **The timely payment of your Rent is critical. No excuses will be accepted for non-payment including ill health, accident, loss of job, financial problems, family emergencies, etc.** If the total Rent is not received by the Delinquent Rent Date of the **4th** each month, Resident will be assessed a late charge of $100.00 Flat Amount ("**Late Charge**") on the **5th**.  An Additional Late Charge ("**Additional Late Charge**") of $15.00 (Dollars) per day thereafter will be charged until all rent and late charges are paid in full.  Additional Late Charges for late rent payment may not exceed 30 days.  The Late Charge a n d A d d i t i o n a l  L a t e  C h a r g e s  shall be payable to Landlord by cashier's check or money order. Resident acknowledges that late payment of Rent may cause Landlord to incur costs and expenses, including processing, enforcement and accounting expenses, and charges imposed on Landlord, the exact amounts of which are extremely difficult and impractical to determine. Resident agrees that the Late Charge a n d A d d i t i o n a l  L a t e  C h a r g e s represents a fair and reasonable estimate of the costs Landlord may incur by reason of late payment.

Resident also will pay Landlord, by cashier's check or money order, $35.00 after the Delinquent Rent Date if, after the Delinquent Rent Date, Landlord serves a written notice of non-payment of Rent required by Local Laws.

Landlord reserves the right to insist upon strict  performance of  all of the terms, conditions, and agreements set forth herein at any time during the Lease Term. Any failure by Landlord to insist upon strict compliance with such terms, conditions and agreements shall not constitute a waiver of any of Landlord's rights to thereafter insist upon or enforce any such terms, conditions, and agreements, and such obligations shall continue in full force and effect. Landlord specifically reserves and does not waive the right to receive all Rent on the due date, regardless of any prior acceptance of any Rent from Resident after the Delinquent Rent Date. Moreover, Landlord's acceptance of any partial payment of Rent or other monetary obligations does not waive Resident's breach of any provision of this Agreement for which the right of re-entry is specified, nor any of Landlord's remedies as set forth herein.

**Except as specifically allowed by Local Laws, routine repairs and maintenance that may be necessary at the Premises shall NOT excuse Resident from the timely payment of Rent.**

3.6.    **RETURN OF PAYMENT FOR NON-SUFFICIENT FUNDS**. If Resident's payment is rejected for non-sufficient funds, Resident understands and agrees that, in addition to the full Rent and Late Charges due, there will be an additional charge in the amount of $35.00, or the maximum amount allowed by Local Laws. In the event that any two (2) payments of Rent during the Lease Term are returned due to non-sufficient funds, Resident shall be "locked out" of the online payment system and prohibited from making payment by personal check, and shall be required to make such payments, together with any and all of Resident's outstanding balance, Late Charge, and any other amounts due to Landlord hereunder, by Money Order or certified Cashier's Check, in person, at the office of the property manager or other Landlord representative, as designated by Landlord in connection with this Agreement.  Only upon personal receipt by the property manager or other Landlord representative of such payment by Money Order or certified Cashier's Check Shall Resident be able to make subsequent payments online or by personal check, as applicable.

Landlord Initials  _____                     Resident Initials  _____ / _____

_____ / _____

_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

Notwithstanding the foregoing, in the event that any three (3) payments of Rent are returned due to non-sufficient funds during the Lease Term, Resident acknowledges and agrees that Landlord may, in its sole discretion, upon notice to Resident require Resident to make all payments required hereunder for the remainder of the Lease Term by Money Order or certified Cashier's Check in person at the office of the property manager or other Landlord representative, on or before the day and subject to the other payment requirements specified herein.

    **3.7.**  **APPLICATION OF PAYMENTS.**  Payments received will be applied as follows: first to any arrears from previous month(s), then to Late Charges, legal and court costs, administrative fees, mailing costs or any other miscellaneous charges owed, and the remainder will then be applied to the Rent for the current month.

    **3.8.**  **RENTAL INCREASE UPON RENEWAL.** In the event this Agreement is renewed, Resident agrees that the Rent may be renegotiated. In the event that the Lease Term under this Agreement is for longer than one (1) calendar year, Resident acknowledges and agrees that Rent shall be increased, in Landlord's sole discretion subject to Local Laws, beginning on the first day after the end of one (1) calendar year. Resident shall, if required by Landlord, enter into a separate Addendum to this Agreement commemorating any applicable Rent increase.

    **3.9**  **RENTAL INCREASE PER RESIDENT.** The Premises will be used only as living quarters for the persons named as Residents. Unless prior written approval is received from Landlord, $100.00 additional Rent per person will be due each month for any other persons occupying the Premises other than those listed above. Resident will be charged this additional amount retroactive to the day the additional Resident first occupied the Premises. Furthermore, occupancy by any such other person without Landlord's prior written approval shall constitute a default of this Agreement by Resident. This provision shall not apply to children born to or adopted by Resident during the Lease Term.

    **3.10.**  **PET RENT.** To the extent permitted by Local Laws, fees and/or Pet Rent due pursuant to the Pet Addendum shall be paid separately from Rent and all other payments due to Landlord and paid by the same method as Rent, pursuant to Section 3.4 of this Agreement.

    **3.11.**  **FAILURE TO PAY RENT**. Resident's failure to pay any installment of Rent or other monetary obligations due hereunder is a default under this Agreement. In that event, Landlord, without limiting any of its other rights and remedies, may, with or without notice to Resident, (a) terminate Resident's occupancy, subject to Local Laws; (b) commence eviction proceedings in accordance with Local Laws; and (c) withhold any Rent due from Resident's Security Deposit, and to the fullest extent permitted by Local Laws, Resident shall continue to be liable for Rent and other charges payable hereunder for the remainder of the Lease Term.

Landlord Initials   _____          Resident Initials   _____ / _____
                                                                 _____ / _____
                                                                 _____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

4. **MOVE-IN/MOVE-OUT.**

   **4.1.** **MOVE-IN.** Resident must list any pre-existing defective conditions and items needing repair on the Resident Move-In/Move-Out Condition Assessment Form accessible on the web portal **www.streetlanehomes.com** completed on-line within 72 hours of Resident's move-in. Except as noted on that form, Resident accepts the Premises in the current "AS IS" condition and warrants that Resident has been given adequate opportunity to fully inspect the Premises and that Resident accepts the Premises, together with ALL furnishings, if applicable as being in good condition. Only items listed in that form shall be accepted as defective, missing or in need of remedial action. The absence of such notice shall be conclusive proof that there is no defective or hazardous equipment or conditions existing as of the start of the tenancy. Only after this Resident Move-In/Move-Out Condition Assessment Form has been completed on-line, within the above 72-hour time limit, will necessary action be initiated to make any needed repairs.  Any defects noted after the first 72 hours will be presumed to have been caused by Resident

Landlord makes absolutely no warranties or representations about the neighborhood or the condition of the Premises, the improvements, utilities, electrical, plumbing, appliances. Landlord shall not be responsible for loss or damage caused by failure of any appliance (including loss of or damage to food or other perishables) in the event an appliance ceases to operate properly. Resident must satisfy himself or herself prior to move-in as to the neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons and other offenders, fire protection, other governmental services, availability, adequacy and cost of any wired and/or wireless internet connections, other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Resident.

   **4.2.** **MOVE-OUT.** Upon vacating the Premises, Resident shall remove all personal possessions and rubbish, steam clean all floors in the dwelling unit, and leave the Premises in "broom clean" condition, in as good or better state than when the Premises were originally rented by Resident. Landlord will utilize the Resident Move-In/Move-Out Condition Assessment Form to determine if any damage or wear in excess of normal expected wear was caused by Resident and, if so, Landlord shall be entitled to apply any or all of the Security Deposit toward necessary repairs and maintenance. Resident also shall return all keys and garage door openers, if applicable, and shall provide Landlord with a written statement of forwarding address. Within the time required by Local Laws, Landlord will give to Resident an itemized written statement of any amounts deducted and the reasons for the deductions from Resident's Security Deposit, along with a check for any balance of the Security Deposit due to Resident. Landlord may deliver the written statement and balance of the Security Deposit personally to Resident, or by mailing the statement and balance of the Security Deposit to Resident at Resident's forwarding address, or if

Landlord Initials  _____          Resident Initials  _____ / _____
                                                              _____ / _____
                                                              _____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

that address is unknown at Resident's last known address. No portion of the Security Deposit shall be retained for normal wear and tear on the Premises.

**5.**     **USE.** Resident agrees that, subject to Local Laws, the Premises will not be used as a business, including a day care or babysitting business, and that the maximum occupancy per bedroom shall be limited to two individuals. Occupants of the Premises who are not named as Resident herein are identified as follows:

**6.**     **NOTICES.** Notice to Landlord or Landlord's agent shall be delivered personally by hand, or by first class U.S. mail or express or overnight delivery at Landlord's office, which office address is subject to change by written notice. Notice to Resident shall be delivered to the Premises.  All notices under this Agreement shall be in writing in the English language.

Landlord and Resident agree that the transaction contemplated by this Agreement or any related transaction between the parties may be conducted by electronic/digital signatures in accordance with the Uniform Electronic Transactions Act.  Resident acknowledges that notices to Resident may be delivered electronically, including via facsimile or electronic mail (email), subject to Local Laws. Notwithstanding the foregoing, Resident may at any time request a physical (non-electronic) copy of this Agreement or of the applicable Local Laws governing this Agreement.

**7.**     **KEYS & LOCKS**. Resident shall not change or add locks without written permission from Landlord. After consent is granted, Resident shall immediately provide LANDLORD with duplicate keys.  In the event Resident changes the lock to the residence without permission from the LANDLORD, any damages that may result to the premises as the result of Landlord not being able to gain access to the premises shall be borne by Resident.  Resident shall be liable for replacement cost should any lock be removed.  Upon termination of this lease, Resident shall surrender to Landlord all keys to the premises.

**8.**     **COMPLIANCE WITH RULES AND REGULATIONS.**   Available in the Resident portal, is a copy of the current "Resident Handbook."  Resident agrees to comply with all of the current rules and regulations, as defined in the Resident Handbook and which Landlord may adopt for the general benefit of all Resident in Premises.  Any violation of these rules, or any one of them, shall be cause for termination of this agreement at the option of the LANDLORD.  As rules and regulations change, Resident shall be provided with written notice of said change (Notices shall also be provided by other means such as web-site postings and bulletin boards throughout the base).  Resident shall be bound by new rules and regulations within seventy-two (72) hours of receipt.  Resident specifically agrees to the attached Rules and Regulations.

Landlord Initials _____     Resident Initials _____ / _____
_____ / _____
_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

**9.**      **PROHIBITED ACTIVITY.** Resident, any member(s) of Resident's household, a guest or any other person affiliated with Resident, at or near the Premises shall not (a) engage in criminal activity on or near the Premises, including drug-related criminal activity (which means the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute, or use a controlled substance); (b) engage in any act intended to facilitate criminal activity, including drug-related criminal activity, on or near the Premises; (c) permit the Premises to be used for or to facilitate criminal activity, including drug-related criminal activity, regardless of whether the individual engaging in such activity is a member of the household or a guest; (d) engage in growing, producing, manufacturing, selling, using, storing, keeping, distributing or giving marijuana or any controlled substance (legal or illegal) at or from the Premises or otherwise; or (e) engage in any illegal activity, including prostitution, criminal street gang activity, threatening or intimidating assault, including the unlawful discharge of firearms, on or near the Premises, or the health, safety and/or welfare of Landlord, its agents, other Residents, neighbors or imminent serious damage to the property of any of them.

**VIOLATION OF ANY OF THE PROVISIONS OF THIS SECTION, OR OF ANY FEDERAL OR LOCAL LAWS, SHALL BE A SERIOUS, MATERIAL AND IRREPARABLE VIOLATION OF THIS AGREEMENT AND GOOD CAUSE FOR IMMEDIATE TERMINATION OF THE TENANCY.**

Unless otherwise prohibited by law, proof of violation shall not require criminal conviction, but shall be by a preponderance of the evidence.

**10.**      **MAINTENANCE.**

   **10.1 MAJOR REPAIRS.** Maintenance and repairs of items that significantly impact habitability of the Premises as determined by Landlord in its sole and absolute discretion or by the Local Laws, shall be deemed "**Major Repairs**." Landlord shall be responsible for Major Repairs, including repairs to the building structure, foundation, heating and air conditioning systems, roofing, mechanical, electrical, and plumbing systems.

Landlord may, at Landlord's sole discretion, hire contractors to perform maintenance or repairs at the Premises; however, no contractor shall be considered an employee of Landlord. Resident shall notify Landlord promptly if any contractor fails to perform requested maintenance or repairs. Notification to a contractor of any further maintenance or repair request beyond that communicated to Landlord does not constitute sufficient notice to Landlord, and Resident agrees to make all maintenance and repair requests directly to Landlord in writing.

   **10.2.      RESIDENTS REPAIR OBLIGATIONS.**      Resident shall be responsible for immediately providing notice to Landlord of any repairs that it believes should be considered to be Major Repairs and shall be charged and responsible for all damage to the Premises as a result of failure to do so. In the event Landlord determines, in its sole and absolute discretion, that any Major Repair is necessary as a result of an act or omission of Resident, Landlord shall have the right to charge Resident for the reasonable cost of the Major Repair as additional rent, subject to Local Laws.

Landlord Initials      _____      Resident Initials      _____ / _____
                                                             _____ / _____
                                                             _____ / _____

Resident, at its sole cost and expense, shall be responsible for the performance of all maintenance and repairs in, around, and of the Premises that do not constitute a Major Repair and are not Landlord's obligation pursuant to Local Laws, including maintaining the Premises in a clean, sanitary condition; routine insect control; replacement of light bulbs and smoke alarm batteries as needed; replacement of air filters no less frequently than once every thirty (30) days; maintenance of exterior landscaping, including trees, grass, and shrubs, and the proper disposal of all clippings and waste (unless other specific requirements are imposed by the applicable HOA, as defined in Section 29 hereof), unless otherwise agreed between Landlord and Resident pursuant to a separate Landscaping Addendum; maintenance and repairs of irrigation valves, lines, sprinklers and drip systems, unless otherwise agreed between Landlord and Resident pursuant to a separate Landscaping Addendum; maintenance and repairs of equipment and appliances at the Premises, except to the extent Local Laws require Landlord to do so; repair and maintenance of all sewer and sink backups or blockages (provided, however, that Landlord shall be responsible for such repair and maintenance of sewer and sink backups and blockages for the first thirty (30) days following the Commencement Date); repair or replacement of any broken glass, regardless of cause, to the extent that Local Laws do not require Landlord to do so; and all repairs or replacements necessitated by Resident or Resident's family, pets or guests, excluding ordinary wear and tear. Any damage to the Premises caused by Resident's pets shall not be considered normal wear and tear.

In addition, Resident, at its sole cost and expense, shall be responsible for installation and maintenance of any items required for the protection of the Premises against extreme weather conditions, storms, and natural disasters. Resident agrees to protect pipes and water fixtures against freezing. If an official hurricane "warning" is issued, Resident also agrees to install hurricane shutters and prepare the Premises for a hurricane and to remove such protections when such warning is lifted or expires.

Other than as specifically outlined herein, Resident will not make any alterations, or improvements in or about the Premises, including painting, wallpapering, adding or changing locks, installing antenna or satellite dish(es), placing signs, displays or exhibits, without the prior written consent of Landlord. Resident also is required to obtain any and all necessary permits required by Local Laws before commencing a Landlord-approved improvement.

Any work performed on the Premises whether by Resident or other parties shall be as an independent contractor or agent of Resident and not an employee or agent of Landlord. Resident further warrants that he or she will be accountable for any mishaps and/or accidents resulting from such work and will defend, indemnify, and hold harmless Landlord and Landlord's agents for, from and against all claims, losses and damages including mechanics and other liens. At Landlord's election, all improvements to the Premises shall be the property of Landlord and shall remain attached to and be a part of the Premises when Resident vacates, subject to Local Laws.

Landlord Initials _____          Resident Initials _____ / _____

_____ / _____

_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

11.    **MOLD**.

Mold consists of naturally occurring microscopic organisms which reproduce by spores. The mold spores spread through the air and the combination of excessive moisture and organic matter allows for mold growth. Reducing moisture and proper housekeeping significantly reduces the chance of mold and mold growth. Resident agrees to maintain the Premises free of dirt, debris and moisture that can harbor mold. Resident shall, at its sole cost and expense, (a) clean any mildew or mold that appears with an appropriate cleaner designed to kill mold; (b) clean and dry any visible moisture on windows, walls and other surfaces, including personal property as quickly as possible; (c) use all air-conditioning, if provided, in a reasonable manner and use  heating systems in moderation; (d) keep the Premises properly ventilated by periodically opening windows to allow circulation of fresh air during dry weather only; (e) use reasonable care to close  all windows and other openings in the Premises to prevent water from entering the Premises; (f) use exhaust fans, if any, in the bathroom(s) and kitchen while using those facilities and notify Landlord of any inoperative exhaust fans; (g) hang shower curtain inside bathtub when showering and only shower in bathtub; (h) immediately notify Landlord of any water intrusion, including roof or plumbing leaks, drips or "sweating" pipes; (i) immediately notify Landlord of overflows from bathroom, kitchen or laundry facilities; (j) immediately notify Landlord of any significant  mold growth on surfaces in the Premises; (k) not leave clothes, towels, laundry, or other items comprised of fabric in wet or damp piles for an extended period of time; and (l) allow Landlord, with appropriate notice, to enter the Premises to make inspections regarding mold and ventilation.

Landlord reserves the right to terminate the tenancy and Resident agrees to vacate the Premises in the event  Landlord in its sole judgment feels that either there is mold or mildew present in the dwelling unit which may pose a safety or health hazard to Resident or other persons and/or Resident's actions or inactions are causing a condition which is conducive to mold growth. Resident acknowledges and agrees that Landlord and Landlord's employees, agents, successors, and assignees will not be responsible for damages or losses due to mold growth to the extent resulting from Resident, members of Resident's household or Resident's guests or invitee's failure to comply with these requirements.

Resident(s)
Initials       _____   _____   _____   _____   _____   _____

Resident agrees by initials below that in the event the premises has a basement and / or garage, such space is not included in the rentable space, not included in any rental amount, and should not be considered living space.  Any use of the basement and / or garage shall be at the Resident's own risk.  Moreover, items stored in these areas may be susceptible to damage from rain, ground water, or other moisture.  Resident agrees to be responsible for maintaining these areas properly, including using a dehumidifier in basement areas to minimize the moisture and clean up any water infiltration that might occur.  Resident agrees to keep any floor and landscape drains free of trash, leaves, and / or debris.

Resident has 72 hours to submit the on-line Move-In/Move-Out Condition Assessment Form provided on the web portal and document any evidence of moisture or organic (mold / mildew) growth.

Landlord Initials    _____              Resident Initials    _____  /  _____
                                                                   _____  /  _____
                                                                   _____  /  _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

## 12.    PEST CONTROL

**12.1.    PEST CONTROL**. Except as provided below in <u>Section 12.2</u>, Resident, at its sole cost and expense, shall be responsible for all pest control. Subject to Local Laws, Landlord shall have no responsibility for any damage done to Resident or any other person or property at the Premises as a result of pests or pest control treatment.

Resident must notify Landlord in writing within one (1) week of the date of this Agreement of any suspected pest infestation. Within thirty (30) days of such notice, Landlord shall arrange for treatment of the Premises a maximum of two (2) times at no cost to Resident. Resident hereby accepts and assumes all responsibility for all pest control thereafter, subject to Local Laws.

**12.2.    BEDBUGS.** "Bedbug" is the name given to a parasitic insect that feeds on the blood of warm-blooded animals, including humans.  More information is available at the website for the U.S. Centers for Disease Control: <u>www.cdc.gov/nceh/ehs/topics/bedbugs.htm</u> Landlord has no knowledge of any bedbug infestation or presence in the Premises.

It is unlawful and a material breach of this Agreement for Resident to allow any materials that are infested with bedbugs to be brought to the Premises. To reduce the risk of bedbugs Resident should: (a) avoid used furniture, clothing, bedding (including mattresses)  and luggage;  (b) completely encase in a zippered cover any used mattress brought to the  Premises; (c)  carefully inspect and clean any luggage used in traveling or brought to the Premises by guests; and (d) avoid sharing vacuum cleaners with others and regularly empty and/or replace vacuum cleaner bags or canisters.

In the event of an actual or suspected bedbug infestation, Resident shall provide Landlord with written notice within ten (10) days of Resident's discovery or suspicion of same. Failure to notify Landlord in writing within such 10-day period shall constitute a waiver by Resident of any claim against Landlord associated with any such infestation, and treatment thereof shall be Resident's sole responsibility. If bedbugs are suspected or discovered in the Premises after Resident takes possession, Resident and Landlord will fully cooperate in the treatment of the bedbugs. Resident agrees that Landlord may access the Premises without notice or consent at all reasonable times in order to inspect for bedbugs if Resident has provided notice of bedbugs or if Landlord has reason to believe that bedbugs may be present in the Premises. Moreover, if Resident knowingly brings items into the dwelling unit that contain bedbugs, fails to take reasonable precautions to avoid bringing bedbugs into the dwelling unit, fails to provide notice to Landlord of the presence or suspected presence of bedbugs within 48 hours of when evidence of bedbugs is discovered, or fails to fully cooperate in the inspection or treatment of the Premises when bedbugs are reasonably suspected, Landlord may consider such as a material breach of this Agreement and terminate this Agreement upon notice to Resident and in accordance with the Local Laws. If it is determined, in Landlord's sole and absolute discretion, that the presence of bedbugs is a result of Resident's failure to comply with the terms of this <u>Section</u>, Resident shall be liable for the cost of treatment and, in any event, Resident shall be liable for any cost incurred if after notice Resident does not make the Premises available and ready for treatment, including taking any necessary pre-treatment action, or does not follow any post-treatment instructions. Resident agrees that Resident and all other occupants, guests and animals may be required to vacate the Premises during treatment. Further, if Resident's failure to notify Landlord of the presence or suspected presence of bedbugs or failure to fully cooperate in the treatment of bedbugs' results in the return of bedbugs to the Premises or the spread of bedbugs to other properties, Resident shall be liable for all damages that result.

Landlord Initials  _____          Resident Initials  _____  /  _____

_____  /  _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

_____   _____

_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

13.     __ALARM SYSTEMS.__ Resident may arrange for the installation of an alarm  system  (the "__Alarm System__") at the Premises, subject to the following: (a) Resident shall engage a reputable, licensed and bonded  security company for the installation of the Alarm System and for the provision of  the resulting  security service;  (b)  Resident  shall  be  solely  responsible  for  the  full cost of the Alarm System,  including  all  installation,  service,  and  maintenance fees;  (c)  Resident  shall  reimburse Landlord,  immediately  upon  demand,  for  any  amounts  expended  by  Landlord in connection with Resident's default under Resident's agreement with its Alarm System  provider, provided however that Landlord  shall  not  be  a  party  to  any  such  agreement  and  shall  bear  absolutely  no  liability thereunder;  and (d) upon the expiration or earlier  termination of this Agreement, Resident shall cause all components of any Alarm System to be removed, shall cancel the service, and shall restore the Premises to at least as good a condition as prior to the installation of the Alarm System.

14.     __TERMINATION__.

     __14.1.     RESIDENT BREACH.__  In the event of a breach of this Agreement by Resident prior to completion of the Lease Term, Resident shall be responsible for lost Rent and the costs and expenses of re-letting the Premises to the full extent allowed by Local Laws. Resident and Landlord agree that it would be  difficult  to  determine  the  cost  of  re-letting  the  Premises  and,  therefore,  in  the  event  of  such termination by Resident, Landlord shall be entitled, subject to any limitations imposed by Local Laws, to receive the balance of all Rent due for the remainder of the Lease Term, plus one additional month's Rent, as liquidated damages and may withhold all of these amounts from the Security Deposit.

     __14.2.     NOTICE TO VACATE. At least thirty (30) days prior to the end of the Lease Term, Resident shall provide written notice to Landlord of Resident's intention to either (a) vacate the Premises at the end of the Lease Term, or (b) enter into a new Rental Agreement for an additional one (1) year term. If such notice is not timely given at least 30 days prior to the end of the Lease Term, Resident shall vacate the Premises promptly at the end of the Lease Term, in accordance with the terms and provisions hereof.__

     __14.3.     HOLDOVER.__ Subject to Local Laws, in the event that Resident holds over the Premises after the Lease Term, the same shall be deemed to be month-to-month tenancy, with an increase of twenty percent (20%) in the monthly rent due from the preceding month, and all other provisions of this Agreement, including the provision requiring at least sixty (60) days' notice of Resident's intention to vacate shall remain in effect.

Landlord Initials  _____          Resident Initials  _____ / _____
                                                              _____ / _____
                                                              _____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

    **14.4.**  **ABANDONMENT.** Formal written notice, with provision for timely Rent payment, is required if there will be an intended absence by Resident. If the dwelling unit appears to be unoccupied for fifteen (15) days while Rent is due and unpaid, or for such time as specified by Local Laws and Resident has not given Landlord written notice of Resident's intention to remain, then Landlord is authorized to deem the Premises abandoned, to take immediate possession of the Premises, and to store, dispose of, or otherwise handle Resident's personal property subject to Local Laws. Resident herein gives Landlord specific authority, without recourse and without limitation of Landlord's other remedies, to dispose of abandoned personal property in any manner Landlord chooses that does not violate Local Laws, with no recourse whatsoever on the part of Resident.

    **14.5.**  **OTHER TERMINATION.** This Agreement may be subject to immediate termination for certain acts as provided by Local Laws, including any act that jeopardizes the health, safety or welfare of Landlord, any agent or employee of Landlord, or another Resident, or which involves imminent or actual severe personal injury or property damage.

**15.**  **TENANT ESTOPPEL CERTIFICATES.** Upon Landlord's request, Resident shall execute and return a tenant estoppel certificate delivered to Resident within three (3) days after its receipt. Failure to comply with this requirement shall be deemed Resident's acknowledgment that the certificate is true and correct and may be relied upon by a lender or purchaser.

**16.**  **ASSIGNMENT.**  Resident shall not assign this Agreement or sublet the Premises or  any part thereof, and shall not allow any person to occupy the same other than persons to whom the Premises is rented under this Agreement without prior written consent of Landlord, in its sole and absolute discretion. Landlord may assign this Agreement at Landlord's sole and absolute discretion to any affiliate or related company of Landlord or to any other assignee without the consent of, or prior notice to, Resident.

**17.**  **ACCESS.** Subject to Local Laws, Resident shall allow Landlord access at all reasonable times to the Premises for the purpose of inspection, to make repairs that have been requested by Resident, or to show the Premises to prospective purchasers or mortgagees or to any other person having a legitimate interest therein, or to make necessary repairs or improvements.  If practicable to do so, Landlord shall give Resident reasonable notice prior to entering the Premises for routine situations requiring access. Resident agrees that in case of emergency or apparent abandonment, Landlord may enter the Premises without notice to or consent of Resident.  Resident authorizes Landlord to place for sale/lease signs on the Premises without notice.

**18.**  **ATTORNEY'S FEES/LEGAL COSTS.** If Resident occupies the Premises after being in default or after being served for eviction or with notice of termination, Resident agrees to reimburse Landlord/Agent for actual costs incurred to enforce collection of rents, to serve notices, for filing fees, etc., including filing fees, costs of collectors, deputies, marshals, police constables, etc., prior to regaining entry or reinstatement of Resident's status as Resident, to the full extent permitted by Local Laws. In any action or proceeding arising out of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs, in addition to other damages awarded, so long as such award is permitted under Local Laws.

Landlord Initials  _____       Resident Initials  _____ / _____
                                                             _____ / _____
                                                             _____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

19.    **LIABILITY.** To the full extent permitted under Local Laws, (a) Landlord and Resident agree that Landlord will not be liable for any damages or losses to person or property caused by other residents, or persons, theft, burglary, vandalism, or other crimes; (b) Landlord shall have no duty to furnish alarms of any kind, security guards, or additional locks and latches and Resident shall not make any changes or additions to the existing locks for any reason without Landlord's prior written consent to do so; and (c) Resident shall indemnify and hold harmless Landlord and Landlord's agents, employees, lenders, and affiliates, for, from and against any and all claims, liabilities, damages, costs or expenses that arise from or are caused by Resident's use or occupancy of the Premises except to the extent arising from the sole negligence or willful misconduct of Landlord, its agents, contractors or employees.

20.    **POSSESSION.** If Landlord is unable to deliver possession of the Premises within seven (7) days of the Commencement Date stated above, then this Agreement may be terminated at Landlord's option and all funds received from Resident will be returned. Resident agrees to release and hold Landlord and its agents and representatives harmless from any further obligation and/or consequential damages.

21.    **SEVERABILITY/VALIDITY OF PROVISIONS.** In the event any portion of this Agreement shall be invalid under Local Laws, the remaining provisions shall continue to be valid and subject to enforcement in a court of competent jurisdiction. In like manner, any obligations of either Landlord or Landlord's agent or of Resident which may become required by Local Laws during the term of this Agreement shall be binding as if included herein. All rights granted to Landlord or Landlord's agent by Resident shall be cumulative and in addition to any existing law and any new law which might become effective. Any exercise, or failure to exercise, by Landlord or Landlord's agent of any right shall not act as a waiver of any other rights.

22.    **JOINT AND SEVERAL LIABILITIES.** Each Resident signing this Agreement is liable for the full amount of any and all financial obligations, and all Residents are jointly and severally liable for any and all financial and other obligations.

23.    **RESIDENT'S WARRANTIES.** By signing this Agreement, each Resident stipulates and warrants (a) all of his or her questions have been answered and that Resident thoroughly understands all provisions as to the rights, duties, and obligations of all parties; (b) at the time of Resident's entry hereinto, Resident is not subject to any bankruptcy proceedings and Resident is not contemplating bankruptcy; and (c) Resident has the legal right to bind all occupants and to sign for them in committing Resident and them to this Agreement. Further, Resident promises and agrees to pay the Rent on time, maintain the Premises, and fulfill all of Resident's obligations hereunder or face the full financial and legal consequences of default and termination.

24.    **LICENSEE DISCLOSURES.** Resident agrees and understands that agents of and representatives of Landlord are licensed real estate brokers or sales persons and that they are not acting as Resident's agent in this transaction and are acting solely for Landlord's own benefit. Resident agrees to hold Landlord free from any and all liability regarding the Premises and transaction arising from any claim of agency.

Landlord Initials _____        Resident Initials _____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

25.    **DEFAULT.** Resident understands and agrees that each of the obligations imposed by this Agreement shall be regarded as material in nature, and violation of any one of such obligations shall entitle Landlord to exercise those remedies provided by Local Laws, herein or, in any separate document entered into between Landlord and Resident whether such document is incorporated herein or not. In the event of any material breach of this Agreement, or in the event of the nonpayment of any sum designated herein as Rent when such sum is due, Landlord shall be entitled, but not obligated, to terminate this Agreement, with or without notice to Resident.

26.    **NO SMOKING**. No smoking of any substance (including but not limited to tobacco, marijuana, or e-cigarettes) is allowed inside the home or on and portion of the Premises. If smoking does occur at the Premises, (a) Resident is in breach of this Agreement; (b) Resident is responsible for all damage caused by the smoking including stains, burns, odors and removal of debris; (c) Resident, guests, and all others may be required to leave the Premises; and (d) Resident acknowledges that in order to remove odor caused by smoking, Landlord may need to replace carpet and drapes and paint the entire home (including the ceilings) regardless of when these items were last cleaned, replaced, or repainted, and/or make other repairs or replacements at the Premises, and that costs incurred will be deducted from the Security Deposit.

27.    **POOL.** If the Premises has a swimming pool, spa or hot tub, Resident agrees to the following:

   a.   Resident and Resident's guests will use the swimming pool, spa and/or hot tub at their own risk. Landlord will not be responsible for any injuries sustained by Resident, and/or Resident's occupants or guests when using the swimming pool, or spa and/or hot tub. Resident shall release, hold harmless, indemnify and defend Landlord for any and all injuries, claims and damages arising out of the use and enjoyment of the pool, spa and/or hot tub during the Lease Term.

   b.   Resident acknowledges that any swimming pool on the Premises either (i) has a fence, gate, or similar barrier (collectively, "**Pool Fence**") as of the Commencement Date, or (ii) will have a Pool Fence installed by a contractor engaged by Landlord, in which event Resident agrees to allow such contractor reasonable access to the Premises for the installation of such Pool Fence.

   c.   Resident agrees to provide access, upon reasonable notice, to Landlord and/or agents of Landlord for the purposes of inspecting, maintaining, and repairing, as and when Landlord may deem necessary, the swimming pool, Pool Fence, spa and/or hot tub.

   d.   Resident must operate the swimming pool, spa and/or hot tub according to the manufacturer's instructions, and must use the Pool Fence in a reasonable, good faith manner so as not to limit or jeopardize the efficacy of such Pool Fence. Landlord is responsible for the general maintenance of the swimming pool, spa and/or hot tub, and Pool Fence, and Resident shall not add any chemicals to the swimming pool, spa and/or hot tub or make any modifications whatsoever to the Pool Fence. Resident is responsible for the full cost that may be due for repair and/or replacement of the swimming pool, spa and/or hot tub, and Pool Fence that may be required as a result of negligence or misuse by the Resident or Resident's occupants or guests.

Landlord Initials _____          Resident Initials _____ / _____
                                                              _____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

_____    _____

_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

a. No pets of any kind are permitted in any swimming pool, spa or hot tub at any time.

b. No children under 18 years of age shall swim or sit in the swimming pool, spa or hot tub without continuous adult supervision.

c. A swimming pool, spa and/or hot tub, and Pool Fence is strictly an amenity, and the use of any such amenity is not guaranteed under the terms of this Agreement. Any interruption or non-availability of the use of any such amenity will not violate any terms of this Agreement.

d. Resident acknowledges and accepts the inherent risks, dangers, and liabilities arising from any swimming pool, spa and/or hot tub at the Premises. Resident shall be solely responsible for properly utilizing the Pool Fence and for otherwise properly securing access to any pool, spa and/or hot tub at the Premises, and accepts full responsibility for the actions, activities, and inactivities of Resident's guests, family, and friends.

e. Resident agrees to notify Landlord immediately in the event repair or maintenance to the Pool Fence is required.  Landlord shall have no liability whatsoever for Resident's failure to use or misuse of the Pool Fence, or of Resident's failure to timely notify Landlord of any required repair or maintenance thereto.

**28.** **HOA.** If applicable, the monthly assessments arising from any homeowners' association that relates to the Premises ("HOA") shall be paid directly by Landlord and are included in the Rent. To the extent Landlord has provided via website link access the HOA Governing Documents to Resident, Resident hereby represents and warrants to Landlord that Resident (a) has reviewed and will comply with all applicable HOA Governing Documents and other instruments of record; (b) shall comply with all requirements, obligations and conditions of any senior interest holder such as Landlord's lender's; (c) shall not disturb, annoy, or endanger other neighbors or use the Premises for unlawful purposes; (d) shall comply with all federal, state and Local Laws; (e) shall  provide prompt written notice to Landlord if it receives any notice of violation of any laws or HOA Governing Documents; (f) shall have no voting rights in the HOA; (g) shall reimburse Landlord for any fines or charges imposed by the HOA as a result of Resident's violation or failure to comply with any of the applicable HOA Governing Documents and other instruments of record; and (h) specifically authorizes Landlord to charge Resident for all fines and charges incurred as a result of Resident's violation or failure to comply with any of the applicable HOA Governing Documents and other instruments of record as additional rent; and, in Landlord's sole discretion and upon demand by Landlord, (i) shall additionally pay to Landlord for each such violation or failure  to comply an administrative fee in the greater amount of (I) 10% of any fine or charge imposed by the HOA, (II) $25, or (III) the maximum amount permitted by Local Laws.  Resident acknowledges and agrees that all rights and obligations of the HOA are derived from the applicable HOA Governing Documents.

**29.** **DAYS.** All references to days in this Agreement shall be construed as calendar days and a day shall begin at 12:00 a.m. and end at 11:59 p.m. local time where the Premises are located.

Landlord Initials   _____      Resident Initials   _____ / _____

_____ / _____

_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

**30.**    **SUBORDINATION/MORTGAGEE PROTECTION**. This Agreement is and shall be subordinate to any mortgages that are now or may hereafter be placed upon the Premises and to any and all advances to be made thereunder and all renewals, replacements and extensions thereof. Resident shall not cause or permit anything to be done that violates any mortgage on the Premises. Resident agrees to sign any document reasonably requested by Landlord's lender in connection with a mortgage on the Premises, including a Subordination, Non-Disturbance and Attornment Agreement in a form satisfactory to Landlord's lender.

**31.**    **FORCE MAJEURE.** Any delay or failure in the performance by Landlord hereunder shall be excused if and to the extent caused by the occurrence of any event that is beyond Landlord's control, such as fires, floods, earthquakes, wars, sabotage, terrorism, vandalism, governmental acts, injunctions, or labor strikes, acts of God and any other occurrences that are unavoidable or unpreventable despite reasonable efforts to prevent, avoid, delay, or mitigate the effects thereof.

**32.**    **DAMAGE TO THE PREMISES.** If, through no fault of Resident, the Premises are completely or partially damaged or destroyed by fire, earthquake, accident, or other casualty that renders the Premises totally or partially uninhabitable, as determined by Landlord based on conditions that Landlord deems unsafe or unsanitary, or by a municipal official, then Landlord may relocate Resident to a comparable property within a reasonable distance of the Premises, and the terms and conditions of this Agreement shall apply thereto. If no such comparable property is available, then at Landlord's sole option, Landlord may, subject to Local Laws, either (a) terminate this Agreement by giving Resident written notice, in which case Rent shall be abated as of the date the Premises becomes totally or partially uninhabitable, and the abated amount shall be  the current monthly Rent prorated for that particular calendar month; or (b) promptly repair the damage, in which case during the time required for repairs, Landlord may, at Landlord's sole discretion and subject to Local Laws, either (i) pay reasonable costs for temporary housing for the Resident in an extended-stay hotel and meals in an aggregate amount not to exceed 150% of Resident's daily Rent until the repairs are substantially completed and Resident can reasonably resume use and occupancy of the Premises, provided, however, that Resident shall continue to pay the full amount of Resident's Rent as required hereunder, or (ii) reduce Resident's Rent based on the extent to which the damage interferes with Resident's reasonable use of the Premises. If damage occurs as a result of an act of Resident or a guest of Resident, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

**33.**    **THIRD PARTY DISCLOSURE**. Unless required by law, Landlord shall not be obligated to provide any party with information with respect to this Agreement or the Premises other than the undersigned Resident or such Resident's permitted assignee or sublessee pursuant to this Agreement.

**34.**    **CONSENT**. Except where expressly stated in this Agreement to the contrary, in all instances where Landlord's permission, consent or approval is required hereby, or where Landlord is entitled to use its discretion or exercise its judgment, Landlord shall be entitled to grant or withhold such consent or approval, and to exercise its discretion, in Landlord's sole, absolute and unfettered discretion.

Landlord Initials    _____          Resident Initials    _____ / _____
                                                              _____ / _____
                                                              _____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

**35.**    **TIME OF THE ESSENCE:** Resident acknowledges and agrees that time is of the essence in all provisions of this Agreement and all addenda hereto.

**36.**    **ATTACHMENTS AND ADDENDA TO THE AGREEMENT.**   Resident certifies that he/she has received a copy of this Agreement and the following attachments and addenda, and understands that these attachments and addenda are incorporated into and form a part of this Agreement:

<span style="color:red">
Landlord Rules and Regulations
Utility Service Addendum
Lead Based Paint Disclosure Addendum
Insurance Addendum
Landscaping Addendum
Method of Rent Payment Addendum
Pet Addendum
Resident Handbook
</span>

Resident(s)        _BP_    /    _BB_    /        /        /        /
Initials        _____   _____   _____   _____   _____   _____

**37.**    **GUARANTY.** If Resident is approved for occupancy of the Premises on condition of securing a guarantor for Resident's obligations under this Agreement, Resident shall cause such guarantor to execute a Rental Agreement Guaranty. Resident acknowledges and agrees that, if a guarantor is required, this Agreement shall not be effective until such time as Landlord has received a signed Rental Agreement Guaranty and has approved the guarantor thereunder.

**38.**    **INTERPRETATION.** The terms "includes" or "including" shall be construed as if followed by the words "without limitation."

**39.**    **ADDITIONAL TERMS.** Landlord and Resident agree and warrant that there are no oral promises, conditions, representations, understandings, interpretations or terms of any kind as conditions or inducements to the execution hereof or in effect between the parties that are not also in this Agreement.

**40.**    **MILITARY AGREEMENT.**  Should the Resident receive notice of Permanent Change of Station Orders (PCS) requiring Resident to vacate said premises and otherwise leave the area outside a fifty-mile radius, and can produce printed verification of said Orders, Resident must notify Landlord, in writing, at least one full rental month prior to vacating the premises. A rental month constitutes from the first day of a month to the last day of a month. The foregoing does not waive entitlement to the last month's rent, nor shall the last month be prorated, but the Resident shall owe a full month's rent after having given the rental months' notice as set forth above. If these conditions are met completely by the Resident, then the Landlord will waive the remaining term of the lease. **ORDERS DISCONTINUING MILITARY SERVICE FOR ANY REASON DO NOT QUALIFY AS PCS ORDERS.**

Landlord Initials    _____        Resident Initials    _BP_  /  _BB_
                                                   _____ / _____
                                                   _____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

**41.**   <u>**SUCCESSORS IN INTEREST**</u>.  This Agreement shall be binding upon and shall inure to the benefit of the heirs, legal representatives and assigns of the parties hereto, and all covenants are to be construed as conditions of this Agreement.

**42.**   <u>**GOVERNING LAW**</u>.  This Lease shall be construed in accordance with the laws of the State of **GA**, including without limitation, the Revised Code and the Landlord - Tenant Act.

**43.**   <u>**COMPLETE AGREEMENT**</u>. This Agreement and the attachments and addenda referred to above represent the entire agreement between the parties hereto.  No amendment to or modification of this Agreement or any attachment or addenda hereto shall be valid unless written and executed by Landlord and Resident.

THIS IS A LEGALLY BINDING CONTRACT. RESIDENT ACKNOWLEDGES THAT RESIDENT HAS HAD AN ADEQUATE OPPORTUNITY TO READ AND STUDY THIS AGREEMENT AND TO CONSULT WITH LEGAL COUNSEL IF RESIDENT HAS SO DESIRED.

*(Signatures on page following)*

Landlord Initials  _____          Resident Initials  _____ / _____
                                                           _____ / _____
                                                           _____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

RESIDENT(S)

_____
Signature

**Precious White**
_____
Printed Name

08/28/2022
_____
Date

RESIDENT(S)

_____
Signature

_____
Printed Name

_____
Date

RESIDENT(S)

_____
Signature

_____
Printed Name

_____
Date

Landlord

_____
By: Authorized Agent

08/29/2022
_____
Date

RESIDENT(S)

_____
Signature

**Ashley Bragg**
_____
Printed Name

08/29/2022
_____
Date

RESIDENT(S)

_____
Signature

_____
Printed Name

_____
Date

GUARANTOR

_____
Signature

_____
Printed Name

_____
Date

Landlord Initials    _____

Resident Initials    _____ / _____
                     _____ / _____
                     _____ / _____

Page 22 of 31

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

### LANDLORD RULES AND REGULATIONS

1. To maintain the premises in a clean, safe, and sanitary condition and to dispose of all rubbish, garbage, trash, and other waste in a sanitary manner.

2. To refrain from and to cause other members of the household and guests to refrain from intentionally or negligently destroying, defacing, impairing, or removing parts of the premises, appurtenances, equipment, furnishings or fixtures.

3. To conduct him/herself and require other persons on the premises with his/her consent to conduct themselves in a manner that shall not interfere with or diminish a neighbor's peaceful enjoyment of their accommodations; and to conduct themselves in a manner which is conducive to maintaining the premises in a decent, safe, sanitary condition; and to refrain from any illegal acts or activities while on the leased rental premises.

4. To pay within fifteen (15) days agreed upon or arbitrated reasonable charges (other than the usual fair wear and tear) for the replacement or repair of damages to any portion of the premises or appliances caused by RESIDENT members of the household or guests.

5. To use only in a reasonable manner all electrical, plumbing, sanitary, heating, ventilation and any other facilities and appurtenances.

6. To not remove any of LANDLORD's furnishings, appliances, or fixtures and make no alterations, repairs, or changes, or to repaint or renovate the interior of the premises or appurtenances without the expressed written consent of the LANDLORD.

7. To be responsible for frozen pipes and other damages caused by open windows or doors, which result from the negligent or wrongful acts of the RESIDENT or their guests and report any defects or water leaks immediately to the LANDLORD. Windows shall be kept closed during the extreme cold months when the premises are unoccupied. If windows are left open in an unoccupied unit during times of ambient temperatures of less than 32 degrees Fahrenheit (32°F), LANDLORD shall enter and close windows at a charge of $25.00.

8. Where applicable, to utilize care such that carpet and pad are not damaged as a part of the cleaning process.

9. To refrain from storing, or having on the premises or grounds, any hazardous or flammable materials with the exception of common household materials. Hazardous materials and non-household batteries must not be left in toters; they must be disposed of in accordance with laws at the Hazardous Waste Collection Center at the Regional Landfill.

10. To maintain all smoke detection devices, fire extinguishers, and carbon monoxide detection devices on the premises in good working order and to promptly notify the LANDLORD of any malfunction.

11. To maintain patios, porches, and decks in good order ensuring access to emergency exits. Patios, porches, and decks are not to be used for unsightly storage.

Landlord Initials _____        Resident Initials _____ / _____

_____ / _____

_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

## UTILITY SERVICES ADDENDUM

The Utility Addendum is incorporated into the Lease Contract (referred to in this addendum as "Lease Contract" or "Lease") dated **10/27/2022** by and between STREETLANE HOMES (Landlord, Authorized Agent for Owner) and **Precious White and Ashley Bragg** (Resident) located at **361 Hunterian Pl** (street address) in **Newnan, GA, 30265** (city, state, zip code). This Utility Services Addendum is in addition to all terms and conditions of the Lease. To the extent that the terms of this Utility Addendum conflict with those of the Lease, this Utility Addendum shall control.

1.  Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, will be as indicated below.
a.  Water, Sewer, Gas, Electric and Trash service to your dwelling will be billed by the service provider to and paid for by STREETLANE HOMES and then allocated directly to you for payment monthly based on the exact amount billed by the service type
2.  If a pass through method for trash or other utility service is used, Resident and Owner agree that the charges indicated on this Agreement (as may be amended with written notice) represent a fair and reasonable amount for the service(s) provided. Resident agrees that Owner retains the right to request and submit a change of Service Provider without prior notice to the Resident. Owner agrees that said change of Service Provider will not interfere with the Residents ability to utilize said services.
3.  When billed by us directly or through our billing company, you must pay utility bills on the 1st day of each month with your rent payment, in accordance with Provision 3. "Rent and Security Deposit of the Lease" of the Lease Contract. Payment received later than the **4th** day of the month is considered late. If a payment is late, you will be responsible for a late fee as indicated in your Lease. The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent there are new account, monthly administrative, late or final bill fees, you shall pay such fees as indicated below.

    | | |
    |---|---|
    | New Account Fee | $10.00 (not to exceed $10.00) |
    | Monthly Administrative Billing Fee | $11.00 (not to exceed $11.00) |
    | Late Fee | $5.00 (not to exceed $5.00) |
    | Final Bill Skip Fee | $10.00 (not to exceed $10.00) |

4.  You will be charged for the full period of time that you were living in, occupying, or responsible for the payment of rent or utility charges on the dwelling. If you breach the Lease, you will be responsible for the utility charges for the time period you were obliged to pay the charges under the Lease, subject to our mitigation of damages.
5.  When you vacate the dwelling, you will receive a final bill which may be estimated based on your prior utility usage. The bill must be paid at the time you move out or it will be deducted from the security deposit.
6.  We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the dwelling unless such loss or damage was the direct result of negligence by us or our employees. You release us from any and all such claims and waive any claims for offset or reduction of rent or diminished rental value of the dwelling due to such outages, interruptions, or fluctuations. Resident agrees not to engage with or contract services through commodity brokers who contract adjustments in utility services, contract rate adjustment savings, or any changes therein to any utility services currently or previously in use and contracted by the owner at this dwelling for the duration of this agreement.
7.  You agree not to tamper with, adjust, or disconnect any utility sub-metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available under the Lease, this Utility Services Addendum and at law.
8.  Where lawful, all utility, charges, and fees or any kind under the Lease shall be considered additional rent, and if partial payments are accepted by the Owner, they will be allocated first to the non-rent charges and to rent last.
9.  You agree that you may, upon thirty (30) days prior written notice from Owner to you, begin receiving a bill for additional utilities and services, at which time such additional utilities and services shall for all purposes be included in the term Utilities. Satellite, Cable Television, and Telephone service are not labeled or considered as additional utilities or be included in the term Utilities within this agreement.
10. This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful. If any provision of this addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this addendum or the Lease. Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.
11. The following special provisions and any addenda or written rules furnished to you at or before signing will become part of this Utility Addendum and will supersede any conflicting provisions of this printed Utility Addendum and/or Lease Contract.

Landlord Initials  _____          Resident Initials  _____ / _____
                                                              _____ / _____
                                                              _____ / _____

Page 24 of 31

## LEAD BASED PAINT DISCLOSURE ADDENDUM

This Lead Based Paint Disclosure Addendum (this "**Addendum**") is dated **10/27/2022**, by and between **Streetlane Homes** ("**Landlord**") and **Precious White and Ashley Bragg** ("**Resident**") between the parties to which it is attached (the "**Rental Agreement**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Rental Agreement.

1.    <u>Lead Based Paint Disclosure.</u>  If the dwelling unit at the Premises was built prior to 1978, Landlord is required to: (i) notify Resident of any known lead-based paint ("**LBP**") or LBP hazards in the dwelling unit; (ii) provide Resident with any LBP risk assessments or inspections of the Premises in Landlord's possession; (iii) provide Resident with the Disclosure on Lead-based Paint and Lead-based Paint Hazards, and any report, records, pamphlets, and/or other materials referenced therein, including the pamphlet "Protect Your Family from Lead in Your Home" (collectively "**LBP Information**"). Landlord hereby gives notice to Resident that?

**[_]**  The dwelling unit at the Premises was constructed prior to 1978, and Resident hereby agrees that Resident has received and executed the Disclosure of Information on the Lead-Based Paint and Lead-Based Paint Hazards, and has received any reports, records, pamphlets, and/or other materials referenced therein, including the pamphlet "Protect Your Family from Lead In Your Home."

OR

**[x]**  The dwelling unit at the Premises was constructed in 1978 or later.

Resident(s) Initials  ___PW___ / ___AB___ / _____ / _____ / _____ / _____

2.    <u>Controlling Provisions.</u>  In the event of any conflict between the terms of this Addendum and the Rental Agreement, the terms of this Addendum shall control.

Landlord Initials  _____          Resident Initials  ___PW___ / ___AB___
                                                          _____ / _____
                                                          _____ / _____

## INSURANCE ADDENDUM
### (Insurance Required by Resident)

This Insurance Addendum (this "**Addendum**") is dated **10/27/2022**, by and between **Streetlane Homes** ("**Landlord**") and **Precious White and Ashley Bragg** ("**Resident**") and is a part of the Rental Agreement between the parties to which it is attached (the "**Rental Agreement**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Rental Agreement.

     1.    <u>No Landlord Liability.</u> Landlord shall not be liable for personal injury or for damage to or loss of Resident's personal property (furniture, jewelry, clothing, etc.) from fire, flood, water leaks, rain, hail, ice, snow, smoke, explosions, interruption of utilities, theft, acts of God, or any other event whatsoever except the gross negligence or willful misconduct of Landlord. Resident understands that Landlord's insurance for these risks does not cover Resident, any of Resident's personal property, or any family members, guests, or invitees or their personal property, and that Resident and its family members, guests, and invitees are not considered a co-insured of the Landlord.

     2.    <u>Personal Liability Insurance.</u> Resident agrees to maintain, at Resident's sole cost and expense, during the Term of the Lease and any subsequent renewal periods, a policy of personal liability insurance, which provides coverage to third parties in the amount not less than $100,000 per occurrence. Landlord shall be named as an interested party on such policy. Resident understands that such liability insurance does not protect against loss or damage to personal property or belongings.

     3.    <u>Losses and Damages to Property.</u> Resident is solely responsible for any damage or loss to the personal property (furniture, jewelry, clothing, etc.) of Resident and its family members, guests, and invitees and their personal property, from fire, flood, water leaks, rain, hail, ice, snow, smoke, explosions, interruption of utilities, theft, acts of God, or any other event whatsoever except the gross negligence or willful misconduct of Landlord, and for obtaining insurance against these risks.

     4.    <u>Insurance Program.</u> Resident acknowledges that Landlord has made available to Resident a program (the "**Program**") providing an opportunity to purchase policies of renter's insurance or personal liability insurance. However, Resident is under no obligation to purchase renter's insurance or personal liability insurance through this Program.

     5.    <u>Proof of Insurance; Failure to Insure.</u> Prior to moving in, Resident must provide proof that Resident has obtained $100,000 personal liability coverage as described in Section 2. Resident shall also provide proof that Resident is maintaining this insurance from time to time thereafter upon Landlord's reasonable request. If Resident fails to provide proof of insurance prior to move in, or fails to maintain insurance as required herein, Landlord may, but shall not be required to, obtain insurance on behalf of Resident, to the extent permitted by the laws of the

Landlord Initials   _____         Resident Initials   _____ / _____

                                                            _____ / _____

                                                            _____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

Jurisdiction in which the Premises is located, the cost of which will be added to the Resident's monthly Rent.

Proof of coverage, whether obtained through Landlord's Program or another broker, must be:

<p align="center">"<em><strong>Uploaded into resident web portal</strong></em>"</p>

      6.    <u>Controlling Provisions.</u>  In the event of any conflict between the terms of this Addendum and the Rental Agreement, the terms of this Addendum shall control.

Landlord Initials _____

Resident Initials _____ / _____

_____ / _____

_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

## LANDSCAPING ADDENDUM

This Landscaping Addendum (this "**Addendum**") is dated **10/27/2022**, by and between **Streetlane Homes** ("**Landlord**") and **Precious White and Ashley Bragg** ("**Resident**"), and is a part of the Rental Agreement between the parties to which it is attached (the "**Rental Agreement**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Rental Agreement.

1. <u>Landscaping</u>. Notwithstanding anything to the contrary in the Rental Agreement, Landlord may provide landscaping services at the Premises, including but not limited to, maintenance of the front yard and backyard garden, landscaping, trees, shrubs, and grass, and proper disposal of all clippings and waste (the "**Landscaping Services**") in the following circumstances and subject to the following terms and conditions:

(a) Resident may request on or before the Commencement Date of the Rental Agreement, or during the Lease Term, that Landlord assume responsibility for Landscaping Services at the Premises. If Resident desires Landlord to assume responsibility for Landscaping Services during the Lease Term, Resident shall deliver such request in writing to Landlord. Landlord shall not be obligated to accept such request; if Landlord accepts such request, then Landlord's provision of Landscaping Services will begin the first day of the first full month following such written request and will continue until the expiration of the Lease Term.

(b) In the event that Resident, in Landlord's sole determination, fails to comply with its obligations under the Rental Agreement with respect to Landscaping Services at the Premises, Landlord shall have the right (but not the obligation) to assume such obligations of Resident upon notice to Resident of such intent, for the remainder of the Lease Term.

2. <u>Payment</u>. If Landlord assumes Resident's obligations with respect to Landscaping Services pursuant to (a) or (b) of Paragraph 1 of this Addendum, Resident shall pay, at the time and place and in the same manner as Resident pays Rent and all other amounts due under the Rental Agreement, an additional fee, that will be determined at the time Landlord assumes Resident's Landscaping Services responsibility at the Premises (the "**Landscaping Fee**"). Resident's failure to timely pay the Landscaping Fee shall be considered a default under the Rental Agreement, and shall entitle Landlord to all remedies available to Landlord thereunder.

3. <u>Controlling Provisions</u>. In the event of any conflict between the terms of this Addendum and the Rental Agreement, the terms of this Addendum shall control.

Landlord Initials _____    Resident Initials _____ / _____

_____ / _____

_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

## **METHOD OF RENT PAYMENT ADDENDUM**

This Method of Rent Payment Addendum (this "**Addendum**") is dated **10/27/2022**, by and between **Streetlane Homes** ("**Landlord**") and **Precious White and Ashley Bragg** ("**Resident**"), and is a part of the Rental Agreement between the parties to which it is attached (the "**Rental Agreement**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Rental Agreement.

Notwithstanding anything to the contrary in the Rental Agreement, Resident shall pay Rent by the following methods:

**Preferred Electronic Payment On Landlord's Website:** Subject to Local Laws, Rent should be paid directly on Landlord's website. To pay Rent on Landlord's website, please log onto **www.streetlanehomes.com** and follow the instructions for paying the Rent.

**Mail**: Rent may be paid by personal check, money order or certified cashier's check made payable to **Streetlane Homes** and sent to the following address:

**717 N. Harwood Street, Suite 2800, Dallas, TX 75201**

**Physical Delivery:** Rent may be paid by physical delivery in the form of personal check, money order or cashier's check, between the hours of 9:00 a.m. and 5:00 p.m. local time to the following address:

**800 Battery Ave, Suite 100, Atlanta, GA 30339**

Cash will not be accepted as a method of rent payment. Checks sent by the U.S. mail and express or overnight delivery are done so at the sender's own risk. Rents will be credited as paid only when actually received by Landlord. If you mail your Rent, it is recommended that it be mailed at least one (1) week early to allow for any delay in delivery. Remember, if your Rent is lost in the mail or not received for any reason, it has not been paid. If it is received after the 4th of each month, Resident is subject to a Late Charge.

Except as expressly modified above, all other terms and conditions of the Rental Agreement shall remain in full force and effect.

The parties hereto have read, agree to and understand the terms of this Method of Rent Payment Addendum as stated herein.

Landlord Initials  _____        Resident Initials  _____ / _____
_____ / _____
_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

### PET ADDENDUM

This Pet Addendum (this "**Addendum**") is dated 10/27/2022, by and between **Streetlane Homes** ("**Landlord**") and **Precious White and Ashley Bragg** _____ ("**Resident**"), and is a part of the Rental Agreement between the parties to which it is attached (the "**Rental Agreement**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the RentalAgreement.

A. A **NON-REFUNDABLE PET FEE in the amount of** ($0.00) ($300.00 initial pet, $100 additional per pet) must be paid in advance of any pets being permitted upon the premises. It is understood and agreed to by the Resident that this **NON-REFUNDABLE PET FEE** is for the sole privilege of having a pet upon the premises regardless if the pet remains or is removed from the premises. Resident is advised that proof of professional cleaning for pet odors and stains will be required at move-out. If such proof is not submitted resident will be charged for such services. **THIS FEE APPLIES ALSO TO "VISITING" PETS AND/OR "HOUSE-SITTING PETS".**

B. There will be an additional monthly premium of ($0.00) ($25.00 for each pet) during the term of the lease or as long as the Resident occupies the unit with the pet(s).

C. Resident understands and agrees, any damages caused by a pet are to be deducted from the Resident's Security Deposit. Furthermore, if damages caused by a pet exceed the amount of Resident's Security Deposit, Resident will be responsible to pay for the difference in cost.

D. Resident will not permit pet(s) to disturb other residents or neighbors.

E. Resident will not leave pet(s) unattended for extended periods of time. Leads, chains, and / or runs are not permitted.

F. When going to and from apartment or house, pet(s) must be kept on a leash or carried.Pet(s) are never to run loose on apartment or house grounds or in the neighborhood.

G. Pet(s) should be walked away from the buildings and should be taught to "curb". Resident will clean and dispose of any and all animal waste in a proper and sanitary manner.

H. Resident agrees that if, in the opinion of the Landlord the pet(s) becomes a nuisance, thepet(s) will be removed from the premises, or upon written notice from the Landlord, Resident will move immediately and forfeit deposit.

Landlord Initials _____          Resident Initials _____ / _____
_____ / _____
_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

I.   Breed restrictions apply, and license veterinarian letter required prior to move in of pet for breed of pet. No Pit Bulls, American Staffordshire Terriers, Rottweilers, Doberman, Wolf Hybrid, Akita, and Chows, or any breed mix of the aforementioned will be allowed.

J.   The maximum full-grown weight allowed will be determined by Landlord.

Name of Pet #2:

Type of Pet #2:

Breed of Pet #2:

Full grown weight of pet #2:

Resident agrees to upload pictures of said Pet into the Resident web portal so that Landlord has a complete understanding of the Pet's physical characteristics.

Name of Pet #2:

Type of Pet #2:

Breed of Pet #2:

Full grown weight of pet #2:

Resident agrees to upload pictures of said Pet into the Resident web portal so that Landlord has a complete understanding of the Pet's physical characteristics.

Landlord Initials _____

Resident Initials _____ / _____

_____ / _____

_____ / _____

Document digitally signed using RENTCafe eSignature services. Document ID: 238501011

## Document Information

Document Reference Number: 238501011

| Document Pages: 31 | Signatures: 3 | Status: Completed |
| --- | --- | --- |
| | Initials: 92 | |

| Signature Summary | Signature | Initials | Timestamp | Signing Status |
| --- | --- | --- | --- | --- |
| Precious White | | | 08/28/2022 05:12:22 PM CST | Completed |
| Document Started:<br>Email Address: | | | | |
| Ashley Bragg | | | 08/29/2022 11:09:21 AM CST | Completed |
| Document Started:<br>Email Address: | | | | |
| LaCresia Solomon | | | 08/29/2022 03:35:35 PM CST | Completed |
| Document Started:<br>Email Address: | | | | |

| Signature Details | Page | Signature/Initials | Signing Status | Tracking Details |
| --- | --- | --- | --- | --- |
| Precious White | 1 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:12:27 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 2 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:12:35 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 3 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:12:33 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 4 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:12:47 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 5 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:13:23 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 6 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:13:28 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 7 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:13:33 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 8 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:13:35 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 9 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:13:45 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 9 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:13:46 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 10 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:13:49 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 12 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:13:52 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 13 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:13:57 PM CST<br>User Agent: Safari on iPhone |

| | | | | |
|---|---|---|---|---|
| Precious White | 14 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:13:58 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 16 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:02 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 18 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:07 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 19 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:09 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 20 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:12 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 20 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:17 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 21 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:20 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 22 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:25 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 22 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:30 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 23 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:32 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 24 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:36 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 25 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:41 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 25 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:44 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 26 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:47 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 27 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:50 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 28 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:14:52 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 29 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:15:05 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 30 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:15:09 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 31 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:15:13 PM CST<br>User Agent: Safari on iPhone |
| Precious White | 31 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:15:15 PM CST<br>User Agent: Safari on iPhone |

| Precious White | 31 | | Completed | IP Address: 174.209.203.89<br>Timestamp: 08/28/2022 05:15:21 PM CST<br>User Agent: Safari on iPhone |
|---|---|---|---|---|
| Ashley Bragg | 1 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:00 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 2 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:00 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 3 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:00 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 4 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:02 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 5 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:02 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 6 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:03 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 7 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:03 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 8 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:03 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 9 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:03 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 9 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:03 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 10 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:07 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 12 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:09 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 13 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:15 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 14 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:18 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 16 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:35 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 18 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:39 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 19 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:42 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 20 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:42 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 20 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:44 AM CST<br>User Agent: Chrome on Android |

| | | | | |
|---|---|---|---|---|
| Ashley Bragg | 21 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:46 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 22 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:48 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 22 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:51 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 23 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:53 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 24 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:55 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 25 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:58 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 25 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:10:57 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 26 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:11:00 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 27 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:11:02 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 28 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:11:04 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 29 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:11:06 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 30 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:11:08 AM CST<br>User Agent: Chrome on Android |
| Ashley Bragg | 31 | | Completed | IP Address: 174.209.194.30<br>Timestamp: 08/29/2022 11:11:10 AM CST<br>User Agent: Chrome on Android |
| LaCresia Solomon | 1 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:51 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 2 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:53 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 3 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:54 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 4 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:54 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 5 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:55 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 6 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:56 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 7 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:56 PM CST<br>User Agent: Chrome on Windows |

| LaCresia Solomon | 8 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:57 PM CST<br>User Agent: Chrome on Windows |
|---|---|---|---|---|
| LaCresia Solomon | 9 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:57 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 10 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:58 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 12 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:58 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 13 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:58 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 14 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:59 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 16 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:33:59 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 18 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:00 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 19 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:00 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 20 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:01 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 21 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:01 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 22 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:02 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 22 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:04 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 23 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:05 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 24 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:05 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 25 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:06 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 26 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:07 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 27 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:08 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 28 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:09 PM CST<br>User Agent: Chrome on Windows |
| LaCresia Solomon | 29 | | Completed | IP Address: 73.207.211.95<br>Timestamp: 08/29/2022 03:34:10 PM CST<br>User Agent: Chrome on Windows |

LaCresia Solomon        30        Completed        IP Address: 73.207.211.95
Timestamp: 08/29/2022 03:34:11 PM CST
User Agent: Chrome on Windows

LaCresia Solomon        31        Completed        IP Address: 73.207.211.95
Timestamp: 08/29/2022 03:34:13 PM CST
User Agent: Chrome on Windows

# EXHIBIT

# C

**Resident Ledger**



**Date: 08/16/2023**

| Code | t0345123 | Property | 11113778 | Lease From | 10/27/2022 |
|------|----------|----------|----------|------------|------------|
| Name | Precious White | Unit | 11113778 | Lease To | 10/26/2023 |
| Address | 361 Hunterian Pl | Status | Eviction | Move In | 10/23/2020 |
| | | Rent | 2114.70 | Move Out | 11/30/2023 |
| City | Newnan, GA | Phone (H) | | Phone (W) | XXXXXXXXXXXXXX |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|------|----------|-------------|--------|---------|---------|---------|
| 06/01/2023 | deposit | Refundable Security Deposit | 1,680.00 | | 1,680.00 | 33358008 |
| 06/01/2023 | | chk# Tip Top #1_SD Deposit Balance per Prior Owner | | 1,680.00 | 0.00 | 10623685 |
| 06/30/2023 | duesell | Balance Due per Previous Owner (Prior 7/1/2023) | 88.92 | | 88.92 | 33361293 |
| 07/18/2023 | late | Late Fee - Per Prior Owner | 280.00 | | 368.92 | 33360116 |
| 07/18/2023 | notice | Notice Fee - Per Prior Owner | 35.00 | | 403.92 | 33360117 |
| 07/18/2023 | rent | Resident Rent - Per Prior Owner | 614.70 | | 1,018.62 | 33360118 |
| 07/18/2023 | utlsetup | Utility Set-Up & Service fee - Per Prior Owner | 7.95 | | 1,026.57 | 33360119 |
| 08/01/2023 | utlgascb | Gas - 05/16/23-06/15/23 | 49.14 | | 1,075.71 | 33417486 |
| 08/01/2023 | utlsetup | Service Fee | 11.00 | | 1,086.71 | 33417488 |
| 08/01/2023 | utlsewcb | Sewer - 05/19/23-06/21/23 | 34.45 | | 1,121.16 | 33417492 |
| 08/01/2023 | utlwatcb | Water - 05/19/23-06/21/23 | 28.44 | | 1,149.60 | 33417495 |
| 08/01/2023 | rent | Resident Rent (08/2023) | 2,114.70 | | 3,264.30 | 33677743 |
| 08/05/2023 | late | Late Fee | 100.00 | | 3,364.30 | 33993772 |
| 08/15/2023 | late | Late Fee, 10 days @ $15.00/day | 150.00 | | 3,514.30 | 33996828 |